Brown Kwon & Lam LLP
Attorneys at Law
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (212) 295-5828
Fax: (718) 795-1642
Email: info@bkllawyers.com

Writer's Direct: clam@bkllawyers.com
(212) 295-5827

August 30, 2023

**Via ECF and Email at ALCarterNYSDChambers@nysd.uscourts.gov**
Hon. Andrew L. Carter Jr., U.S.D.J.
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    *Quaglia v. 1226 Second Avenue Realty Corp. d/b/a Primola, et al,.*
            Case No. 1:23-cv-4565 (ALC)(OTW)

Dear Judge Carter,

      This firm represents GIUSEPPE QUAGLIA ("Plaintiff") in the above-referenced matter. We write to respectfully request judicial approval of the parties' Fair Labor Standards Act ("FLSA") settlement agreement, attached hereto as **Exhibit A** (the "Settlement Agreement"), and subsequent dismissal of the matter with prejudice. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015).

      The Settlement Agreement resolves Plaintiff's claims pursuant to the FLSA and New York Labor Law ("NYLL") for the total amount of $10,000.00. As part of this motion, Plaintiff's counsel requests one-third (1/3) in attorneys' fees ($3,182.67) plus costs ($452.00) from the total settlement amount for his wage and hour claims.

      The Settlement Agreement also separately contemplates a release of any, and all, potential employment discrimination claims that Plaintiff has asserted, or could have asserted, up until the date of the execution of the Settlement Agreement. The Settlement Agreement sets forth a total amount for $15,000.00 for Plaintiff's agreement to release any and all potential employment discrimination claims that he may have, of which, Plaintiff's counsel requests one-third (1/3) of such an amount for attorneys' fees ($5,000.00) from the total settlement amount for Plaintiff's employment discrimination claims.

      Here, the Parties submit that the terms of their proposed Settlement Agreement for Plaintiff's wage and hour claims are fair, reasonable, and adequate. For the reasons outlined below, the Court should approve this $10,000.00 settlement as a fair, reasonable, and adequate compromise of Plaintiff's wage and hour claims against Defendants.

## BACKGROUND

On May 31, 2023, Plaintiff filed the above-referenced matter as a class and collective action, alleging claims for unpaid wages, among others, pursuant to the Fair Labor Standards Act, as amended ("FLSA") and the New York Labor Law ("NYLL"). On or about June 20, 2023, Plaintiff provided a draft First Amended Complaint to Defendants and informed them of his intention to amend the Complaint to individually add discrimination claims arising under the New York State Human Rights Law and the New York City Human Rights Law. Defendants' response was due August 14, 2023, on which date the Parties informed the Court that the Parties had reached a settlement in principle following several months of settlement negotiations.

## THE SETTLEMENT IS FAIR AND REASONABLE

Pursuant to *Cheeks*, "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court." *Cheeks*, 796 F.3d at 206; *see also Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). "Generally, there is a strong presumption in favor of finding a settlement fair, as the court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzcha v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013). "Because *Cheeks* itself did not define the contours of the approval analysis or protocols it envisioned, most district courts within our Circuit turn to the multi-factor test set out in *Wolinsky* to evaluate whether an FLSA wage and hour settlement is fair and reasonable." *Cabrera v. CBS Corp.*, No. 17 Civ. 6011, 2019 US Dist LEXIS 20963, at *13 (S.D.N.Y. Feb. 8, 2019) (internal quotation marks omitted).

Accordingly, in determining whether a proposed FLSA settlement is fair and reasonable, courts consider the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *See Wolinsky*, 900 F. Supp. 2d at 335. Based on these factors, the proposed settlement should be approved as fair and reasonable.

    a. <u>Plaintiff's Range of Possible Recovery</u>

The first favor weighs in favor of approval. Here, the settlement amount is $10,000.00. *See* **Exhibit A.** Assuming a best-case scenario, Plaintiff's damage liability analysis amounts to $22,630.00, including liquidated and statutory damages. *See* **Exhibit B.** This damage liability analysis assumes that Plaintiff worked an average of forty-two hours per week, was not compensated a base minimum wage rate, not even at the tip credit minimum wage rate, and that Plaintiff would prevail on each of his wage-related claims. Based on Plaintiff's damage liability analysis, his total unpaid wages is $7,740.00, for unpaid wages, an equal amount of $7,740.00 for liquidated damages, and his statutory damages pursuant to the Wage and Theft Prevention Act amount to $7,150.00.

Although the settlement amount of $10,000.00 represents a recovery of 44% of his best-case scenario, including liquidated and statutory damages, the settlement amount covers at least 100% of his best-case, owed wages, and a 15% recovery of Plaintiff's liquidated and statutory

damages, based on his best-case scenario. As such, this is a significant recovery based on Plaintiff's best-case scenario.

b. Litigation Costs and Risks

The second and third factors also favor approval. As the parties are still in the early stages of litigation, having settled prior to Defendants filing a response to the Complaint. If the Parties were to continue with litigation, the Parties would have to serve and respond to formal discovery requests, conduct depositions, and engage in extensive motion practice.

Here, where Defendants are willing to settle for 100% of Plaintiff's alleged unpaid wages and approximately 15% of Plaintiff's alleged liquidated and statutory damages, Plaintiff bears a high risk that his recovery would be significantly reduced. During the course of negotiations, Defendants provided Plaintiff's wage statements, and although the parties dispute the veracity of the wage statements, Defendants nonetheless assert that they acted in good faith and compensated their tipped employees at a rate of at least the prevailing tip credit minimum wage rate of $10.00 per hour. If a factfinder agrees, Plaintiff would be precluded from recovering any liquidated damages, and his best-case scenario would be reduced from $22,630.00 to $10,090.00. On this basis, the $10,000.00 settlement amount would represent a 99% recovery, without protracted litigation.

For the foregoing reasons, the Parties believe that the settlement amount is fair and reasonable. Plaintiff is able to obtain a significant recovery of his alleged damages without the burden of further litigation and trial. While Defendants deny the allegations in the Complaint, as the Parties are still in the preliminary stages of litigation, without having completed formal discovery and depositions, Defendants believe that the settlement is fair and reasonable so as to avoid the anticipated burden and expense of further discovery and the fee-shifting nature of FLSA cases.

c. Arm's-Length Bargaining and Lack of Fraud or Collusion

The fourth and fifth factors also weigh in favor of approval. The settlement was reached over the course of several months of negotiations. Furthermore, Plaintiff's counsel has significant experience with wage and hour claims. There is also clearly a lack of fraud or collusion as the settlement amount represents 100% of Plaintiff's alleged unpaid wages, and 15% of Plaintiff's alleged liquidated and statutory damages.

In addition to the foregoing, the Court should approve the settlement as the agreement does not contain provisions that Courts in the Second Circuit have regularly found problematic in approving settlements pursuant to the FLSA. *Cheeks*, 796 F.3d at 206; *Gurung v. White Way Threading LLC,* 226 F. Supp. 3d 226, 228 (S.D.N.Y. Dec. 8, 2016). The Settlement Agreement neither contains an overly broad release, nor a confidentiality provision. Although there is a mutual non-disparagement clause, there is no clause that would prevent Plaintiff from discussing the settlement of his FLSA and NYLL claims or from making truthful statements regarding his employment.

In order to resolve Plaintiff's discrimination claims under the New York State Human Rights Law and New York City Human Rights Law, the Parties entered into a separate release in the Settlement Agreement for Plaintiff's employment-discrimination claims, of which the release

3

was narrowly tailored to release only his employment-related discrimination claims, and for which separate consideration was contemplated in the Settlement Agreement. *See Chowdhury v. Brioni Am., Inc.*, No. 16 Civ. 344, 2017 U.S. Dist. LEXIS 196469, at *13 (S.D.N.Y. Nov. 29, 2017) ("Judges in this District routinely approve bifurcated settlement agreements, in which the parties submit their FLSA agreement for court review and approval but enter into a separate agreement that addresses the non-FLSA claims, which does not require judicial [review and approval] and may contain provisions that would be impermissible under *Cheeks*."). As the releases in the Settlement Agreement are limited to the claims in the existing lawsuit, the Court should approve the FLSA settlement. *Lazaro-Garcia v. Sengupta Food Servs.*, 2015 U.S. Dist. LEXIS 167991, at *6 (S.D.N.Y. Dec. 15, 2015)("If the parties wish to obtain approval of their settlement, any release provision must be limited to the claims at issue in this action").

Lastly, as will be discussed below, Plaintiff's counsel's requested attorneys' fees are not excessive as they only seek one-third of the settlement, which is typical of FLSA cases. The Parties' separate release of Plaintiff's non-wage claims also provides for attorneys' fees in the amount of one-third of the settlement amount. Based on the foregoing, there is no evidence of fraud or collusion. Therefore, Plaintiff respectfully requests that the Court find that the Agreement is a "fair and reasonable" compromise of her FLSA claims against Defendants and approve the settlement.

## **THE REQUESTED ATTORNEYS' FEES AND COSTS ARE REASONABLE**

Plaintiff further seeks approval of attorneys' fees and costs. In accordance with Plaintiff's contingency-fee basis retainer agreement with Plaintiff's counsel, the Agreement provides that Plaintiff's counsel will recover $3,634.67, equaling (i) $452.00 in reimbursement of costs (i.e., ECF filing fee and service of process cost) and (ii) $3,182.67 in attorneys' fees, which is one-third of the $10,000.00 settlement amount after deduction of the $452.00 in costs. See **Exhibit A**. The amount requested for attorneys' fees is fair and reasonable as it was the fee agreed upon by Plaintiff in his retainer agreement, and a contingency fee of one-third is sufficient to account for the risks associated with representation.

Plaintiff's counsel has worked without any compensation to date, and Plaintiff's counsel's fees have been wholly contingent upon the result achieved. As of the date of this filing, Plaintiff's counsel has spent approximately 23.0 hours investigating, researching, and litigating Plaintiff's claims, and negotiating and executing the settlement, for a lodestar of $9,200.00. See **Exhibit C** for Plaintiff's counsel's contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done, and an itemization of costs. *See Wolinsky*, 900 F. Supp. at 336.

Plaintiff's counsel's request for attorneys' fees in the amount of one-third of the settlement amount is fair and reasonable. "[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases." *Meza v. 317 Amsterdam Corp.*, No. 14 Civ. 9007, 2015 U.S. Dist. LEXIS 166890, at *5 (S.D.N.Y. Dec. 14, 2015); *see also Ramirez v. Greenside Corp.*, No. 16 Civ. 726, 2017 U.S. Dist. LEXIS 30527, at *9 (S.D.N.Y. Mar. 3, 2017) (stating "contingency fees of one-third in FLSA cases are routinely approved in this Circuit"); *Leon v. Univ. 45 Fruit & Vegetable Corp.*, No. 19 Civ. 8266, 2020 U.S. Dist. LEXIS 48716, at *5 (S.D.N.Y. Mar. 20, 2020) (finding the amount of the fee award reasonable where "the attorneys' fees amount is approximately 33% of the [ ] settlement amount after costs").

4

Lastly, Plaintiff's counsel expended $452.00 on the ECF filing fee and cost for service of process. *See* **Exhibit C**. These costs are commonly reimbursed by courts in this District. *See e.g.*, *Chamoro v. 293 3rd Cafe Inc.*, No. 16 Civ. 339, 2016 U.S. Dist. LEXIS 136101, at *9-10 (S.D.N.Y. Sep. 30, 2016) (holding that court filing fees, service of process, costs of mailing, legal research, and other litigation costs are generally recoverable). As such, Plaintiff's counsel's attorneys' fees and costs are fair and reasonable and should be approved by the Court.

<div style="text-align:center">*       *       *</div>

For the foregoing reasons, Plaintiff respectfully requests that the Court approve the attached Settlement Agreement and dismiss the above-referenced matter with prejudice.

We thank the Court for its time and consideration.

<div style="margin-left:50%">
Respectfully submitted,

*/s/ Clara Lam*
Clara Lam, Esq.
clam@bkllawyers.com
</div>

cc:     all parties via ECF